Since we've had an extended argument on some overlapping, to put it mildly, issues, we're going to hold you to the time limit this time. It may not be necessary to use the full time in order to repeat what we've already heard. Put another way, as a reverse of Civil Code Section 3537, superfluity does vitiate in this case. I quite agree, Your Honor. May it please the Court, my name is Stephen Rauscher of the firm Reuben, Rauscher & Blum. I'm here today representing my client, Timothy Reuben. I'd like to reserve five minutes of my time for rebuttal to the extent I need the full ten minutes for my initial comments. I had already been planning to not spend a lot of time on the open transaction doctrine, other than to say that our first position is that we believe that it does apply. We believe that the Fisher case correctly analyzes the situation, and I would not presume to try to inject more commentary beyond what Mr. Welty has so ably said about that, other than to say that if there are any issues in rebuttal, I'll do my best to respond to them. If the Court were to find that the open transaction doctrine does not apply, obviously we are in a different procedural posture than in the Dorans case. This case was decided at summary judgment, and I would suggest to the Court that there was sufficient evidence presented below to raise a tribal issue of fact to get us past summary judgment to the stage where if open transaction doesn't apply, then we could bring in experts to testify and deal with some of the very complicated issues that you were just speaking about in the Dorans case. What the Coleman case said was that if it is clear that some amount has been paid for property, but it is not possible to determine that amount with exactitude, it is not appropriate to declare the basis to be zero. What the District Court found in its order was that plaintiff provides no evidence in support of the proposition that it was in fact impossible to value the policy rights and the membership rights separately,  Well, respectfully to the District Court, that's simply incorrect, because there was evidence provided by the plaintiff on that issue. Number one, we provided an expert declaration from a CPA, who was also the CPA who assisted with the tax refund in this case, Mr. Foxman, who opined that, quote, manulife ownership rights had value, but at the time the policy was purchased, those ownership rights could not be separated from the insurance policy or sold separately, end quote. Now, his opinion, unlike what the District Court said, was not simply based on parroting Fisher. The expert reviewed not only the Fisher case, of course, but manulife's plan of demutualization, which, quote, acknowledged the value of the ownership rights, end quote. He also reviewed the IRS's letter that was part of the tax refund process, in which the IRS at that time acknowledged that the membership rights have basis. And, of course, he reviewed various other documents that are in the record. They're all listed in his report at pages 895 through 897. But in addition to the expert report, we didn't rest on that. We also put into evidence manulife's plan of demutualization, in which manulife explained that demutualization, explained this to the policyholders, will, quote, unlock, end quote, the value of the ownership rights by giving members common shares in exchange for these rights. That was manulife's own view, that those rights had value. And then, thirdly, of course, we put into the record evidence that there was $1.7 million in premiums paid. Counsel, maybe you're getting to this now, but I've had a colloquy with your colleague on the other side about value versus basis. You make a very good argument about the value. The market also, of course, speaks to that. And in this case, the service originally actually valued the shares. What was it, $4.00? $9.00, I think. $9.00, okay. Something to share, and then withdrew that. I'll be interested to hear what the government's reasoning was on that. But can you focus specifically on what the expert said, what was said to the district court in terms of basis, qua basis, as opposed to value? What the expert said is that he couldn't calculate it, okay, because we believe that he couldn't calculate the basis, right? That it was inextricably intertwined, and that, therefore, it was at the time of the purchase, and, therefore, that he was not able to separately calculate it. So given that, if the open transaction is not accepted, and then you're in a situation where you need to show if any basis was paid, and he explains the intellectual construct for a basis, but then he says he can't calculate it, was there any evidence that you put in as to the basis is a fixed finite amount? Not a fixed finite amount, but we're not required to demonstrate it with exactitude. Right, exactly. We're simply required to demonstrate that there was something. And what the Dorrance case said on summary judgment,  but it was one of two cases at the time that our summary judgment motion was decided, what it said on summary judgment was, quote, plaintiffs have met their burden of showing they paid something for the mutual rights by proving that they paid premiums for policies that included the policy rights and the mutual rights. Period, end of story, summary judgment denied. This is a different case. So they had a trial, okay, and you're on summary judgment, and what I'm having trouble understanding is they say, well, we can't tell you the amount, so that even if the judge wanted to rule in your favor, there's no amount. I mean, you haven't said, you know, because of the way you've structured it, you're not saying that all the premiums were for this right, correct? All the premiums form the basis? That's what forms the basis, of course, because of the open transaction doctrine. Right, but once the, if the open, and I know that was where everything was headed in the discussion, but if the open transaction doctrine is rejected, and then you're just in a situation of what is the basis that I want the court to consider that we did pay, which was some allocable portion of the premiums, there's no evidence in the record. There's not a specific number. There's no number. That's what should have been, but the question is. But then what, you know, what, how, if the court disagreed with the government in principle that there's always a zero basis, and it agreed with you in principle, you don't have any evidence for the court to give you relief on, right? The question is whether there was enough to get past summary judgment, and we put in exactly the same evidence that was sufficient to get past summary judgment endurance. Yeah, but that, we're not reviewing summary judgment endurance. I mean, that seems odd to me that you can get by summary judgment and say, well, there's some value. I'm just, we can't calculate it, but there is some value. Did you put a formula in? No, nothing. You did not, okay. So then my question is, did you ever say to the judge or in any of these papers, well, maybe $9, and I forget, I know you don't agree with that number, but at a minimum, it's $9.28. That was not an argument that we made. That was evidence that was in the record by virtue of the expert report. I think that the government's position is, and I think there's some law to support this, that you're not supposed to look at, you know, what the IRS's preliminary determinations may have been. But that is there. But if you take it out, if you make a determination as a matter of law, then we have a situation where there's absolutely no evidence in the record as to any basis value, correct? There's not evidence of a formula. There's no formula. There's no range. There's just the fact that it's something. Well, there's a dollar amount in terms of the 100 percent of what the premiums were paid, so that therefore there's evidence that there was something paid for it. Did you assert that? Yes. That that was the basis? Yes. No, but you asserted that if you were using the open transaction. Did you assert based on your person's testimony that there is a portion of this? Let me ask it a different way. Did you ever make the claim, apart from the open transaction doctrine, that 100 percent of the premiums represents the basis? No, that's not our position. Okay, because that would be contrary to the expert testimony. In other words, from your perspective, I think this is where my colleagues go on this, is there a failure of proof here where under summary judgment rules, if you don't have any proof, then you've got a problem. Is it your position that because you relied upon the open transaction doctrine and as part of that you asserted that 100 percent of what was paid as a premium was your basis, that that's sufficient if the open transaction doctrine is rejected to get you past summary judgment because you have at least asserted a basis, and I mean this in a non-tax sense, where a basis could be determined at some point? Right, and not just asserted. We put in all the checks. Right, but let's get real here in the sense of that's an argument you didn't make, though. That's totally the opposite of the argument I just asked you, which is apart from the open transaction doctrine, did you ever make a claim that 100 percent of the premiums would represent the basis? And you said no, and one of the reasons you didn't make that is because that, of course, would have been. You say there's some value, but it would have been inconsistent. Because I understand your argument. The disagreement's fairly clear. Your position is that once you say that there is some basis, but you're not saying exactly what it is, that that's sufficient to get by summary judgment. And the other position would be that in order to get by summary judgment, you have to show that you can establish a particular amount. And if you're correct, you should win, and if you're not, you're probably going to lose. I agree, and I would say that the Coleman case, we were not required to demonstrate it with exactitude. We were simply required to demonstrate that there was something paid. Okay, thank you. Thank you. Good morning. May it please the Court. The district court correctly determined that the trust paid no policy premiums for the membership rights and, therefore, the basis in the stock was zero. Was that a finding of fact, counsel? No. The case was decided on summary judgment, and what the court determined was that there was no issue of fact. Okay. No issue of fact. Sorry if I missed that. I'm sorry if I misspoke with regard to whether the trust had been required to pay anything for the membership rights. The government put forth evidence that mutuals do not charge anything for the membership rights, that the premiums were made the same, that they didn't decrease after the mutualization, that the trust told Rubin that the cost basis in the stock was zero. So the entity that had been paying the premiums was taking the position, the position that the government endorses that all of the premiums are paid for the contract rights and none for the membership rights. Let me ask you this, counsel. I realize they can't do that, but I can. The IRS initially stated that the basis was $9.28 per share. How was that determined? I realize the government withdrew that. We're not holding you to anything. I just want to know how that was arrived at. Sure. The IRS agent sent a preliminary proposal based on the Fisher decision, which looked at the IPO price of the stock the day of the mutualization, and the IPO price of the Manulife stock, which is the company in this case, was $9.28. So basically that was the IPO price. That was the IPO price. That's what it was. But the final determination, of course, was that the basis was zero, and as Ruben has conceded, this is on page 612 of the excerpt of record, the IRS has never provided a basis calculation to the taxpayer in this case other than zero. Let's take the precise argument that he made. If Ruben is correct, as Mr. Durrance also argues, that there can be some disaggregation and some value, some basis value put on this, which I recognize is not your position, but if there is such a value, then would he get by summary judgment because his expert has said there is a value. I can't put a number on it, but there is some value. Therefore, that defeats summary judgment. Our position is no because the evidence that he put forward in response to the government's summary judgment motion, the Foxman report, his expert, and the Manulife demutualization plan both discussed value. His expert said, I couldn't determine the value before the demutualization. Again, that's not the issue. The issue is whether there's any basis, and that Foxman did not refute the government's expert testimony that premiums are not charged for membership rights. So that was just undisputed. So from your perspective, the government's expert talked about basis, their expert talked about value, and never shall a twain meet from your perspective. That is correct. And could this case be different than Durrance in terms of a factual predicate with respect to what the trust's determination of acknowledgement of basis was, and then he would be, I guess, a derivative of that basis? I think that's correct. I mean, that's supporting evidence in the government's case. The trust here was taking the position that the policy premiums had been paid for the policy rights, that the basis in the stock was derived from the basis in membership rights was zero. We also had the evidence that the independent actuary, in this case, said the policyholders were receiving a windfall. No sense of return of premiums. It was a windfall. Let me ask you this. I don't want you to be concerned, but hypothetically, let's assume for a moment that we determine as a matter of law that a portion of what a mutual policyholder pays for a premium is basis. Just assume we do. And in that hypothetical, in this case, Mr. Rubin's counsel, they talked about they put in, I gather, checks that said they paid so much in premiums. They didn't tie it, I gather, to basis because they just said this is what we paid. But if we say, hypothetically, that that's part of it, is that enough to get past summary judgment? That would get it to trial, basically. So there's a determination made how much would actually be there. Yes, because then there would be a disputed issue of fact over whether something had been paid. I think that's right. Right, okay. I do think that's right. But here there's, again, basis. I know you've heard enough from me. Interesting issue. But just going to the other piece of evidence they put in, which was Manulife's demutualization plan, that, too, did not discuss whether anything had been paid, only whether at the time of demutualization the membership rights had value, and they had value equal to the stock. And, in fact, the demutualization plan of Manulife incorporated, without critique, the tax advice that the basis in the stock was zero because nothing had been paid for the membership rights, as well as the independent actuary's conclusion that the receipt of stock was a windfall. And for the sites of the record, just in case you want to find it, the tax advice was on Excerpt of Record 216 through 220, and page 227, and the independent actuary's conclusion is 304 of Excerpt of Record. One point with regard to the open transaction doctrine is just that counsel has not demonstrated or even explained how it would be equitable to apply it in this situation. And it is an equitable doctrine, and we've detailed in our briefs. I'm happy to answer any questions you have about why it's not equitable. But it's life insurance, so the retained piece of property is not going to be sold so that the transaction can close. And here there's the complication that the retained property is held by the trust, whereas the stock was sold by Mr. Rubin, so that Rubin's taxation in the future can never be calculated. It would never close. It would never close. And plus you also, I'm sorry, go ahead. I was going to say that. No, please. No, no, I was going to say I thought we'd explored the issue. Oh, indeed we have. Indeed. Brilliantly stated. And there's the additional wrinkle that there has been appreciation in the stock. Thank you. Thank you very much. Thank you. All right, we'll give you a short time. Can you answer the assertion by your opposing colleague that the evidence introduced only had to do with the value of the stock, not the basis? Well, I think she also conceded that the evidence in the form of the checks that were the payments of the premiums did go to the issue of cost, not just value. I'd also point back to the Manulife Plan of Mutualization, which, and I think this is a very telling word, it unlocked the value. So, yes, before that you couldn't put a value on it, but there was. No, I'm not talking about value. I'm talking about what you paid for it. Yeah, I mean that's the premium. Did your expert say anything? Did he say you paid something for that, that your payment of premiums included a payment for the related items that you got other than the insurance, the interest in the funds? What he said was that the ownership rights had value, but at the time the policy was purchased, those rights could not be separated from the insurance policy or sold separately. And, yes, so I think his opinion reasonably construed is that some portion of the cost was attributable to it. He couldn't separate it out. So to follow up on what she talked about before, he stated that way, that some portion of what was purchased, if you will, was other than the policy and you paid money for it. So that is basis. I mean that's what we're talking about, right? You're just saying you didn't use those words. Well, I quoted you a snippet. Judge Smith is helping you make an argument you didn't quite make in your brief. Did you make that argument? I quoted you a snippet of his report. I'd have to go back and look at the report to see if there was an additional quote going specifically to that. All right. Thank you. Thank you, Your Honors. The case just argued will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, McKeown, Smith